UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

WILLIE JAMES NEWMAN,

   Plaintiff,

v.              Case No. 15-C-1363

MICHAEL VAGNINI,
JEFFREY CLINE,
PAUL MARTINEZ, AND
CITY OF MILWAUKEE,

   Defendants.

## AFFIDAVIT OF MICHAEL A. VAGNINI IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

STATE OF WISCONSIN )
          ) SS.
MILWAUKEE COUNTY )

  MICHAEL A. VAGNINI, being first duly sworn on oath deposes and states as follows:

  1.  I was employed as a police officer by the Milwaukee Police Department from 2004 through June of 2013. I have personal knowledge of the information averred to in this affidavit.

  2.  Prior to my application to the City for the position of police officer, I completed high school and had earned 60 college credits. After being sworn in as a police officer, I completed approximately 22 weeks of police recruit training at the Milwaukee Fire and Police Training Academy, and then worked with experienced field training officers for several months.

3. I successfully completed my recruit training and my field training, and then began to perform the duties of a Milwaukee police officer, either while patrolling on my own or while patrolling with a partner or other police officers. After 18 months of employment, I successfully completed my probationary period.

4. I resigned from my position with the Milwaukee Police Department in June of 2013.

5. Throughout the course of my almost nine year tenure with the Milwaukee Police Department, I was current, with regard to receiving my annual, continuing or "in-service" training with the Milwaukee Police Department, and I continuously maintained my certification to act as a law enforcement officer in the State of Wisconsin.

6. I attended several specialty training seminars and/or courses presented by trainers and other representatives of the Milwaukee Police Department and other entities, throughout the course of my career.

7. Beginning with my recruit and field training, and during my early days as a police officer, I was made aware of not only Milwaukee Police Department policies and SOPs, but also standards maintained by the Wisconsin Department of Justice Law Enforcement Standards Board, regarding the parameters surrounding conducting traffic stops, along with conducting frisk or pat-down searches of individuals I stopped in the course of conducting police work.

8. During my experience as an officer with the City of Milwaukee Police Department, I made numerous arrests of individuals who had concealed weapons and/or illegal narcotics in the buttocks region of the body.

9. In my policing experience, I observed that it was a common practice for individuals who used illegal drugs and/or sold them, to hide illegal drugs in parts of their bodies

2

or clothing to conceal them from the police. I knew that drugs could be secreted in a suspect's anus or vagina, under testicles, in underwear, or in other clothing.

10. Throughout my career, I was aware than an officer could conduct a frisk or a pat-down search if he reasonably suspected that a subject posed a danger of physical injury to the officer or another person.

11. I understood the primary purpose of a frisk or pat-down search is to determine if the subject being patted down/frisked is concealing a weapon.

12. I understood that an officer could conduct a strip search of an arrested subject, but only pursuant to the parameters established by Wisconsin Statute Section 968.255. Milwaukee Police Department Standard Operating Procedure 090 mirrored that statute section, with regard to the proper parameters for conducting a strip search. I understood that as a police officer, I could not, under any circumstances, conduct a body cavity search.

13. I was fully aware that a "strip search" meant a search during which a detained person's genitals, pubic area, buttocks, or anus, or a detained female person's breasts, is uncovered and either is exposed to view or is touched by a person conducting such a search. I was fully aware that it was unlawful for me to pull down a subject's pants and underwear and expose his buttocks and/or genitalia while conducting any type of search in a place subject to public view. I also understood that it was unlawful for me to have skin-to-skin contact with the buttocks and/or genitalia of a person being searched, and that I could not touch a man's scrotum to assist in the process of retrieving illegal narcotics which he secreted under or near his scrotum.

14. I was fully aware of the legal standards surrounding conducting a pat-down or frisk search, as described above, throughout the course of my tenure with the Milwaukee Police Department, and I never intentionally or knowingly violated any of those standards.

15. I did conduct a pat down search of Willie J. Newman on April 30, 2010. The search I conducted was lawful. I recovered illegal narcotics from under his waistband, by turning out the waist band and grabbing the baggies which contained those substances. I did not pull down Mr. Newman's pants and/or underwear, or touch his genitalia in any manner, as he alleged in his complaint filed in this case.

16. Throughout my career with the Milwaukee Police Department, I was fully aware of the fact that the Chief of Police did not tolerate officers who violated either departmental rules and/or the law, and that if I conducted any search that was contrary to MPD SOPs and/or state statutes, I could be subject to employment-related discipline, including termination, as well as criminal prosecution, which could result in incarceration.

Dated at Milwaukee, Wisconsin this 12th day of August, 2016.

                                                                                         s/MICHAEL A. VAGNINI
                                                                                         MICHAEL A. VAGNINI

Subscribed and sworn to before me
this 12th day of August, 2016.

s/Susan E. Lappen
State of Wisconsin, Notary Public
My Commission is permanent.

1032-2015-2891:230766