# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

WILLIE JAMES NEWMAN,

                Plaintiff,

      v.                              Case No. 15-CV-1363

MICHAEL VAGNINI, et al.,

                Defendants.

## REPORT OF PROPOSED FINDINGS OF FACT
## PURSUANT TO 28 U.S.C. § 636(b)(1)(B)

A jury trial in this matter was commenced before the Honorable J.P. Stadtmueller on November 21, 2016. (ECF No. 60.) The evidentiary portion of trial continued through November 22, 2016 and the jury was discharged for deliberations shortly before 5:00 PM. (ECF No. 60 at 8.) The jury returned with its verdict at 11:30 AM on November 23, 2016. (ECF No. 60 at 8-9.)

The jury found that defendant Michael Vagnini's search of plaintiff Willie James Newman was conducted in an unreasonable manner and awarded Newman $150,000 in compensatory damages from Vagnini. (ECF No. 62 at 1.) The jury further found that defendants Jeffrey Cline and Paul Martinez knew that Vagnini was conducting an

unreasonable search, had a realistic opportunity to prevent it, and failed to take reasonable steps to prevent it. (ECF No. 62 at 2-4.) The jury awarded Newman $60,000 from Cline and $60,000 from Martinez. (ECF No. 62 at 3, 4.) The jury also awarded punitive damages in the amount of $1,125,000 as to Vagnini; $200,000 as to Cline; and $400,000 as to Martinez. (ECF No. 62 at 4-6.) Thus, the jury in total awarded Newman $1,995,000.

Acting on a hunch that jurors might have based their verdict upon matters outside the record, counsel for the defendants "directed a member of [the City Attorney's Office's] paralegal staff to use public means, including accessing 'Facebook' postings, in order to determine if any juror engaged in inappropriate information-gathering prior to reaching a verdict in this case." (ECF No. 69, ¶ 6.) The research identified the Facebook postings of Juror Number One.

Based upon what they observed on the Facebook page they attributed to Juror Number One, the defendants filed a motion asking the court to question the jurors "to determine if extraneous prejudicial information was improperly brought to the attention of the jury." (ECF No. 67.) Judge Stadtmueller referred the motion to this court. The court granted the motion (ECF No. 72) and a sealed evidentiary hearing was held in the court's jury room on December 16, 2016. Present were counsel for the plaintiff, Ronald Bornstein, and counsel for the defendants, Miriam R. Horwitz, Naomi E. Gehling, and Susan E. Lappen.

2

As a preliminary matter, the court notes that it finds nothing improper in the investigation undertaken by the defense. In a 2014 formal opinion, the American Bar Association's Standing Committee on Ethics and Professional Responsibility explicitly approved such investigations of a juror's public internet presence. ABA Comm. on Ethics & Prof'l Responsibility, Formal Op. 466 (2014). The Committee stated, "Unless limited by law or court order, a lawyer may review a juror's or potential juror's Internet presence, which may include postings by the juror or potential juror in advance of and during a trial, but a lawyer may not communicate directly or through another with a juror or potential juror." *Id.*

The court is not aware of Judge Stadtmueller having precluded any such research. Nor does any Wisconsin rule of professional responsibility or local rule of this court prohibit such actions. This court's General Local Rule 47(c) prohibits only communicating with jurors absent court approval. There is no indication that any such communication occurred here.

Having reviewed the Facebook records attributed to Juror Number One that the defendants submitted, the court found only one aspect merited inquiry. On November 26, 2016, Juror Number One posted a link to a local television station's report that a federal jury awarded a Milwaukee man nearly $2 million for an illegal strip search. (ECF No. 69-1 at 20 (this document was submitted under seal because it disclosed Juror

Number One's identity; the court discloses here only non-confidential aspects of the filing).)

The following morning, a person commented on this post:

> Why don't you become a judge? If you can sit through that ish and not lose your ish- you should just be the judge. You researched the payouts of similar cases. You have a psychology background and can tell when people are b.s.ing. You could do a lot of good everyday. What if you made it to the supreme court?

(ECF No. 69-1 at 21 (quoted as written).) Only one line of this statement is of any concern: "You researched the payouts of similar cases." (ECF No. 69-1 at 21.) The post is silent as to the timing of any such research. If all such research was conducted any time other than between the beginning of the trial and the jury's return of its verdict, the research would not be problematic.

Mindful of the well-established and strong public policy against post-verdict inquiries into the decision-making of the jury, *see Tanner v. United States*, 483 U.S. 107, 119-20 (1987); Fed. R. Evid. 606(b), the court's inquiry was exceedingly narrow, limited to whether any matter not presented as evidence at trial was nonetheless improperly presented to the jury, *Haugh v. Jones & Laughlin Steel Corp.*, 949 F.2d 914, 917 (7th Cir. 1991). The court avoided any questions about what role any such outside information played in the jury's deliberations or discussions. *Id.* The court's goal was to adduce evidence to enable Judge Stadtmueller to determine whether the jury considered improper outside information and, if so, whether a reasonable possibility exists that

such improper outside information affected its verdict. *See United States v. Sababu*, 891 F.2d 1308, 1333 (7th Cir. 1989); *see also United States v. Bruscino*, 687 F.2d 938, 941 (7th Cir. 1982).

The court questioned Juror Number One. Juror Number One authenticated the posts contained in ECF Nos. 69-1 and 69-2 as coming from her Facebook page. She testified that she did not conduct any outside research during the trial. However, she testified she is a "researcher by nature" and, therefore, immediately following the completion of the trial on November 23, 2016, she researched what victims of police misconduct, including victims of unlawful strip searches, received in other cases. It was this research that the commenter on her post, whom she characterized as her best friend, was referring to on Facebook. When asked if she shared with other jurors anything that she learned from any outside research, she said she did not. She denied having any knowledge of the actors in this case prior to trial or conducting any research regarding any of them during the trial.

The court then questioned the jury foreperson. The foreperson denied that any juror provided the jury information as to what compensation persons in similar cases received. However, the foreperson testified that, on the second day of deliberations, Juror Number One asked if the jury would like to know what she learned by doing research about awards in other civil actions. The jury members agreed they would and Juror Number One provided information as to what she learned in her research. The

foreperson did not have a specific recollection of what information Juror Number One provided but did recall that the cases were not related to police misconduct; they might have been employment discrimination cases. The foreperson did not know when Juror Number One undertook such research and did not know Juror Number One's source, although the foreperson suspected it was the internet. It was the foreperson's belief that Juror Number One was not providing information based upon her personal experience.

The court finds that the testimony of the two witnesses to be in conflict. Based upon the court's observations of the witnesses during the hearing, the testimony of the witnesses, and evidence presented with the defendants' motion, the court finds that the greater weight of the credible evidence supports the finding that Juror Number One *did* do research on payouts in other civil actions during the trial and before the jury rendered its verdict. The court finds the  foreperson's testimony more credible to the extent that it conflicts with that of Juror Number One.

A transcript of these proceedings is being prepared.

This matter is returned to Judge Stadtmueller.

Dated at Milwaukee, Wisconsin this 19th day of December, 2016.

WILLIAM E. DUFFIN
U.S. Magistrate Judge